636 P.2d 317

**Jaime CARDENAS, Plaintiff-Appellant,**

v.

**UNITED NUCLEAR HOMESTAKE PARTNERS, Defendant-Appellee.**

**No. 4983.**

Court of Appeals of New Mexico.

Oct. 20, 1981.

James G. Chakeres, Horton & Associates, Albuquerque, for plaintiff-appellant.

Walter K. Martinez, Gary Fernandez, Grants, for defendant-appellee.

## OPINION

DONNELLY, Judge.

Plaintiff appeals from a judgment entered by the trial court finding claimant not to be disabled and denying, with the exception of two medical bills, the allowance of workmen's compensation or related benefits.

Plaintiff sustained an injury while working as an underground miner in defendant's uranium mine near Grants, New Mexico on December 3, 1979. The accident that precipitated plaintiff's claim was occasioned by a bank cave-in which struck him on the back and head and pushed him about eight or nine feet along the tunnel.

Plaintiff was treated or examined by five different doctors at varying times following his accident. The testimony of several of the experts materially differed regarding his condition.

Immediately following his accident, plaintiff was taken to Grants Clinic and treated by Dr. Arnolfo Valdivia, a physician furnished by defendant. Dr. Valdivia testified that plaintiff complained of pain in both ankles and his back, although x-rays of both legs, ankles and back showed no fractures or abnormalities. The physician, however, found some slight disability and released plaintiff to light duty work only.

From the day following the accident through January 6, 1980, plaintiff continued to work only on light duty. On December 11, 1979, plaintiff consulted an independent physician, Dr. Loh Seng Yo. Dr. Yo found evidence of swelling and redness in plaintiff's feet, a possible torn ligament, and leg infection. Dr. Yo referred plaintiff to Dr.

Peter Stern, an orthopedic surgeon. Dr. Stern examined plaintiff and found him disabled from January 3 through January 7, 1980, but released him to full duty as of January 7, 1980 and expected no permanent impairment.

Plaintiff returned to see Dr. Valdivia on January 7, 1980. He released plaintiff to full duty as a miner. From January 7, 1980, plaintiff worked regular duty as a miner until January 18, 1980, when plaintiff obtained permission to take personal leave time. However, plaintiff did not return to work after leave had expired and defendant terminated his employment as of January 29, 1980.

On the same day plaintiff was terminated, he again visited Dr. Yo, who placed a cast on his ankle. Dr. Yo found plaintiff free of symptoms at the end of February when the cast was removed. Plaintiff was examined approximately eight times between February and May, 1980, by Dr. Myron Rosenbaum, an orthopedic surgeon. Dr. Rosenbaum concluded that plaintiff suffered a 5% permanent disability and probably could only perform light labor. During May, 1980, plaintiff was also evaluated by Dr. Norman Moon, an orthopedic surgeon. Dr. Moon testified that plaintiff was disabled due to the December accident and could no longer perform work as a miner or heavy laborer.

At the trial, defendant introduced testimony that plaintiff had been treated for back problems prior to his mining accident by Dr. Soulsby, a chiropractor, and by Dr. Yo, in some instances due to injuries received from an automobile accident and from fighting. Neither Dr. Rosenbaum nor Dr. Moon had any knowledge of these earlier problems at the time of their evaluations, as plaintiff had failed to disclose them.

Shortly before trial in July, 1980, plaintiff again saw Dr. Yo and Dr. Valdivia. Both doctors could find no objective symptoms to indicate any continued disability. Dr. Valdivia testified that in his opinion plaintiff had no disability as of July, 1980, nor could he find evidence of the disability

on January 7, 1980. He further questioned the appropriateness of the ankle cast which had been placed upon plaintiff after his dismissal.

Following the final hearing on the merits, the trial judge entered a written decision and adopted findings that plaintiff had suffered injuries arising out of and in the course of his employment on December 3, 1979, and continued to work on light duty until January 7, 1980; plaintiff incurred two medical bills for Dr. Yo and Dr. Stern for treatment of his injuries; on January 7, 1980, plaintiff was released to full duty by Drs. Stern and Valdivia; plaintiff returned to full duty until he left the defendant's employment on January 19, 1980; plaintiff suffered no disability due to his accident; and that plaintiff had fully recovered from any injuries or disability as of January 7, 1980.

On the above findings, the court concluded that plaintiff was not entitled to workmen's compensation benefits except for payment of the two bills of Dr. Yo and Dr. Stern.

This appeal raises issues concerning the failure to adopt certain findings, lack of substantial evidence and medical bills. Specifically plaintiff asserts error in that: (1) the court failed to find that plaintiff was in fact disabled on January 29, 1980; (2) the court failed to find plaintiff was permanently disabled from returning to work as a miner; (3) there was no substantial evidence to support the court's finding that plaintiff was released to full duty by Dr. Stern and Dr. Valdivia; (4) there was no substantial evidence to support the court's finding that plaintiff was fully recovered on January 7, 1980, and (5) the court declined to allow the reasonable and necessary medical bills of Dr. Rosenbaum.

## I. Claim of Disability:

Findings of the trial court determined that plaintiff suffered no disability as a result of his accident and that he had completely recovered from any injuries or disability as of January 7, 1980. Plaintiff in his first point on appeal contends that the court failed to find that the plaintiff was disabled on January 29, 1980. Plaintiff's second point asserts that the court erred in not finding that plaintiff was permanently disabled from working as a miner. Plaintiff's point two is technically foreclosed by his failure to specifically challenge the trial court's finding that he suffered no disability. *Prager v. Prager*, 80 N.M. 773, 461 P.2d 906 (1969), *Trujillo v. Tanuz*, 85 N.M. 35, 508 P.2d 1332 (Ct.App.1973); see N.M.R.Civ.App. 9(m)(2), N.M.S.A. 1978, (formerly codified at 21–2–1 (15)(16)(b), N.M.S.A. 1953 (Repl. Vol. 4). Nevertheless, we discuss plaintiff's first and second points jointly.

Plaintiff argues that the trial judge failed to consider whether his disability existed after January 7, 1980, and ignored uncontroverted testimony that a disability existed from January 29, 1980, through the date of trial in July, 1980. Plaintiff claims that the trial court considered only his January 7, 1980 examination and return to work; that it disregarded the testimony of Dr. Yo concerning the placing of claimant in an ankle cast, and that it disregarded the testimony of Drs. Rosenbaum and Moon. Plaintiff also asserts that under the holdings of *Sena v. Gardner Bridge Co.*, 93 N.M. 358, 600 P.2d 304 (Ct.App. 1979), *cert. denied*, 92 N.M. 675, 593 P.2d 1078, and *Johnson v. C & H Construction Co.*, 78 N.M. 423, 432 P.2d 267 (Ct.App. 1967), it is incumbent upon the trial judge to make a finding as to the existence of the workmen's condition as of the time the case is heard and judgment is entered.

In *Sena v. Gardner Bridge Co.*, the rule was stated that, at the time of trial, the court must find whether plaintiff's injury resulted in a disability that terminated before judgment was entered or plaintiff's injury resulted in disability in existence at the time judgment was entered. *Sena*, however, was subsequently overruled on other grounds in *Glover v. Sherman Power Tongs*, 94 N.M. 587, 613 P.2d 729 (Ct.App. 1980), *cert. denied*, 94 N.M. 675, 615 P.2d 992.

Johnson v. C & H Construction Co. does not support plaintiff's contention as to a requirement for a specific finding of claimant's disability at time of trial. There the court dismissed an appeal in a workmen's compensation case, holding that the trial court's award of temporary disability compensation and deferment of its decision as to further disability payments was not a final judgment.

■ We need not rest our decision on these authorities. In the instant case the court's finding no. 5 determined that plaintiff suffered no disability due to his accident on December 3, 1979. Finding no. 6 of the trial court states that plaintiff had completely recovered from any injuries or disability as of January 7, 1980. These findings may be interpreted as findings that plaintiff was therefore not disabled as of every date between January 7 and the date of trial. If plaintiff was fully recovered in January, then logically he was also fully recovered in February, March, etc. Also, since plaintiff's attorney did not request a finding that plaintiff was disabled from January through the date of trial, but only requested a general finding of disability, he may not be heard to complain on appeal. *Hamilton v. Woodward*, 78 N.M. 633, 436 P.2d 106 (1968).

■ Plaintiff points to medical evidence of his swollen ankle, pain and discomfort which existed subsequent to January 7, 1980. Although plaintiff may have suffered an injury, this is not the equivalent of a disability. The trial court determined that such facts did not render plaintiff disabled within the contemplation of the Workmen's Compensation Act. The distinction between injury and disability was discussed in *Lamont v. New Mexico Military Institute*, 92 N.M. 804, 595 P.2d 774 (Ct. App.1979), *cert. denied*, 92 N.M. 675, 593 P.2d 1078. The distinctive feature of our compensation system, in contrast with tort liability, is that awards, apart from medical benefits, are made not for physical injury as such, but for "disability" produced by such injury.

The concept of "compensable disability" intrinsic to our workmen's compensation law is that in order to be entitled to an award of compensation benefits a workman must not only suffer a physical impairment, but also be unable to perform work. Section 52–1–24, –25, N.M.S.A. 1978; *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980). Larson in his treatise on workmen's compensation law recognizes the distinction between "injury" and "disability,":

The key to understanding of this problem is the recognition at the outset, that the disability concept is a blend of two ingredients, whose recurrence in different proportions gives rise to most controversial disability questions: The first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is *de facto* inability to earn wages, as evidenced by proof that claimant has not in fact earned anything.

The two ingredients usually occur together; but each may be found without the other. * * *

2 A. Larson, Workmen's Compensation Law § 57–11 at 10–6 to –7 (1981).

■ Although there was expert medical testimony that the plaintiff was disabled after January 7, 1980, the trial court was not bound by such testimony. Where medical evidence is conflicting, the testimony of a physician is not conclusive and the trier of facts may accept, reject or give such weight only as it deems the evidence warrants. *Gallegos v. Kennedy*, 79 N.M. 590, 446 P.2d 642 (1968); *Renfro v. San Juan Hospital Inc.*, 75 N.M. 235, 403 P.2d 681 (1965); *Lucero v. Los Alamos Constructors, Inc.*, 79 N.M. 789, 450 P.2d 198 (Ct.App.1969);

■ Under the facts of this case the medical evidence concerning plaintiff's alleged post-dismissal disability is not uncontradicted as contended by plaintiff. Dr. Valdivia testified he examined plaintiff a few days prior to trial and found no evi-

50

dence of the existence of any disability. Although the opinions of the expert medical witnesses were conflicting, and the evidence cited by plaintiff could have supported a different conclusion by the trial court, it is not a prerogative of this court on appeal to weigh the testimony of medical experts, but rather to ascertain whether there is substantial evidence to support the trial court's evaluation of the evidence and determination of where the truth lies. *Moorhead v. Gray Ranch Co.*, 90 N.M. 220, 561 P.2d 493 (Ct.App.1977), *cert. denied*, 90 N.M. 254, 561 P.2d 1347; *Sentry Insurance Co. v. Gallegos*, 87 N.M. 249, 531 P.2d 1222 (Ct.App. 1975), *cert. denied*, 87 N.M. 239, 531 P.2d 1212. Findings are to receive such construction as will uphold rather than defeat a judgment, and, if from the facts found the other necessary facts to support the judgment may be reasonably inferred, it will not be disturbed on appeal, *Griego v. Hogan*, 71 N.M. 280, 377 P.2d 953 (1963); *Greenfield v. Bruskas*, 41 N.M. 346, 68 P.2d 921 (1937).

II. *Denial of Payment of Medical Bills*:

Plaintiff, for his final point in his appeal, asserts that the trial court erred in ordering payment of Dr. Stern's and Dr. Yo's bills but refusing to approve the bill of Dr. Rosenbaum. Payment of the bills of Drs. Yo and Stern were not challenged on appeal.

Dr. Rosenbaum's bill was incurred by plaintiff between February and May, 1980, long after January 7, 1980, the date the trial court found plaintiff no longer disabled. Testimony showed only that Dr. Rosenbaum's bill was at a reasonable rate, but not that his treatment was medically necessary. Its necessity was refuted. Medical treatment for which payment is sought in a workmen's compensation case must be shown to be reasonably necessary. *Williams v. City of Gallup*, 77 N.M. 286, 421 P.2d 804 (1966); *Dudley v. Ferguson Trucking Co.*, 61 N.M. 166, 297 P.2d 313 (1956); *Casaus v. Levi Strauss & Co.*, 90 N.M. 558, 566 P.2d 107 (Ct.App. 1977), *cert. denied*, 90 N.M. 636, 567 P.2d 485. The trial court's refusal to order payment of Dr. Rosen-

baum's bill was not inconsistent with his approval of the other medical bills.

Plaintiff also failed to justify payment of Dr. Rosenbaum's bill under the requirements of the Workmen's Compensation Act. See *Dudley v. Ferguson Trucking Co.*, supra.

Section 52-1-49 (B), N.M.S.A. 1978, requires an employer to furnish reasonable medical services to an injured workman who has sustained an injury covered under the workmen's compensation law. This provision however, does not aid plaintiff under the facts of this case. Under the statute, the employer generally has the right in the first instance to select the physician or surgeon to care for the injured employee. The injured employee may not recover for medical services independently incurred by him unless the employer has failed to provide such services. *Montoya v. Anaconda Mining Co.*, 97 N.M. 1, 635 P.2d 1323 (Ct.App. 1981); *Valdez v. McKee*, 76 N.M. 340, 414 P.2d 852 (1966).

At trial, defendant presented the testimony of Roy Souther, Safety Director at defendant's mine who had authority to authorize medical treatment. The witness testified that defendant covered plaintiff under its workmen's compensation program and provided reasonable medical care and treatment, and therefore the bill of Dr. Rosenbaum was denied payment. Plaintiff was furnished with medical services, and denial of payment to Dr. Rosenbaum was not error.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

HENDLEY and SUTIN, JJ., concur.