This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JOHN POLK,**

Plaintiff-Appellant,

v.                                                                 **NO. 32,297 consolidated**
                                                                   **with NO. 32,427**

**DAVID AUBREY and JOYSREE**
**AUBREY,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Sheri A. Raphaelson, District Judge**

John R. Polk
David A. Archuleta
Albuquerque, NM

for Appellant

West Law Firm, PLLC
Judd C. West
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     John Polk (Plaintiff) appeals a judgment and final order of the district court dismissing his claims for a prescriptive easement and an easement by implication over a road located on property owned by David and Joysree Aubrey (Defendants). We affirm.

{2}     Additionally, we are compelled to reiterate our concern about the practice of some district courts adopting, verbatim, a prevailing party's requested findings of fact and conclusions of law. *Los Vigiles Land Grant v. Rebar Haygood Ranch, LLC*, 2014-NMCA-017, ¶ 2, 317 P.3d 842. "This Court looks askance at wholesale verbatim adoption of . . . requested findings of fact and conclusions of law[,]" because, "[t]his practice can all too often result in unsupported, ambiguous, inconsistent, overreaching, or unnecessary findings and conclusions." *Id.* As a result, where appropriate, "we will relax our usual deferential review." *Id.*

**BACKGROUND**

{3}     In 1949, Rex Shroyer and his wife (Shroyer) purchased several thousand acres of land in Rio Arriba County and operated a cattle ranch on the property. In the late 1960's, Shroyer began subdividing the land and building roads to prepare the land for marketing. A portion of the Shroyer ranch was developed and became known as Laguna Vista. Plaintiff acquired land in Laguna Vista in the early 1980's.

**{4}** Plaintiff regularly accessed undeveloped areas of Laguna Vista, including one road in particular, Sierra Leone Drive, where he routinely hiked and ran his dogs. The parcel of land containing Sierra Leone Drive does not adjoin Plaintiff's property. At the time Plaintiff began using Sierra Leone Drive, Shroyer still owned the property. Shroyer knew that Plaintiff and others used the road; however, during the period of time relevant to this appeal, he did not object or attempt to keep them from using it.

**{5}** In 2004, Defendants bought the parcel of land containing Sierra Leone Drive from Shroyer. Subsequently, Defendants attempted to restrict access to the road by erecting fencing and gates. Plaintiff sent several letters to Defendants requesting that he be granted access to Sierra Leone Drive. Eventually, Plaintiff filed a complaint for declaratory judgment and injunction, asserting a claim to an easement over Sierra Leone Drive, and requesting that the district court issue a restraining order and an injunction prohibiting Defendants from restricting access to the roads on their property. After a two-day bench trial, the district court found that Plaintiff failed to prove the necessary legal elements for an easement or that he had any other right to access the property, and entered a judgment in favor of Defendants. This appeal followed.

**DISCUSSION**

3

{6} On appeal Plaintiff argues that the district court erred in finding that he failed to establish prescriptive and implied easements over Sierra Leone Drive because he has adversely used the road for recreation and convenience and as part of a common network of roads for more than twenty years, and because the road has served as his anticipated means of emergency egress. We disagree.

**Standard of Review**

{7} On appeal, we review the district court's findings to determine whether they were supported by substantial evidence. *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 9, 133 N.M. 50, 61 P.3d 176. We review legal questions arising from a district court's application of law to the facts involving the existence of an easement de novo. *Skeen v. Boyles,* 2009-NMCA-080, ¶ 17, 146 N.M. 627, 213 P.3d 531.

**Prescriptive Easement**

{8} Plaintiff contends that he acquired three types of prescriptive easements over Sierra Leone Drive: (1) a prescriptive easement for recreational use or convenience, (2) a public prescriptive easement due to the fact that Sierra Leone was a part of a common network of roads, and (3) a prescriptive easement for emergency egress. We recognize that in addition to his claims of private prescriptive easements, Plaintiff asserts the creation of a *public* prescriptive easement, and that the "[c]reation of such an easement presents unique analytical problems (such as whether it amounts to a

4

taking of private property without compensation)." *Algermissen*, 2003-NMSC-001, ¶ 10. As in *Algermissen*, and with the facts before us, our analysis of this type of prescriptive easement is the same as it would be if Plaintiff had only asserted a private prescriptive easement. *Id.* Therefore, we analyze all of Plaintiff's claims for prescriptive easements together.

{9}    "[A]n easement by prescription is created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period (of ten years)." *Id.* In order to establish an easement by prescription, each of the elements thereof must be proved by clear and convincing evidence. *Id.* ¶ 9. With regard to all three of Plaintiff's claimed prescriptive easements, the central issue is whether Plaintiff's use of Sierra Leone Drive was adverse.

{10}    Adversity or lack thereof is often difficult to prove. *Id.* ¶ 11. As a result, "a series of presumptions are used" to accomplish that task. *Id.* Where there is no evidence that a property owner has granted express permission to use the property, a presumption of adversity applies. *Id.* ¶ 13. However, when determining whether a plaintiff's use was adverse, a property owner need not demonstrate express permission in order to defeat a prescriptive easement claim; the district court may consider other evidence of permission. *Id.* ¶¶ 12-13 ("[I]mplied permission is also permission sufficient to rebut the presumption [of adverse use]."); *see also Hester v. Sawyers*,

1937-NMSC-056, ¶ 25, 41 N.M. 497, 71 P.2d 646 ("If a use has its inception in permission, *express or implied,* it is stamped with such permissive character and will continue as such until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts." (emphasis added)). If the presumption of adversity is rebutted by evidence of express or implied permission, the plaintiffs still must prove that their use was adverse. *Algermissen*, 2003-NMSC-001, ¶ 13. The issue before the district court was whether Plaintiff initially made use of the road in a way that was either adverse or that subsequently became adverse by the "positive assertion of a right hostile to the owner" of the land. *Hester,* 1937-NMSC-056, ¶ 25.

{11} In *Algermissen,* the district court found that property owners had given implied permission to neighbors and members of the community to use their property for various recreational activities. 2003-NMSC-001, ¶ 15. This finding was supported by evidence that the property owners would greet, wave to, and chat with people who lived in the area, which our Supreme Court characterized as conduct "consistent with permission." *Id.* ¶ 14. Additionally, there was no evidence of hostility from the property owners which would have rebutted the presumption of implied permission. *Id.* ¶ 15. As a result, the Court held that the district court had properly presumed that the plaintiffs' use of the property was impliedly permissive and remained so until the property owners restricted access to the property. *Id.* In that case, implied permission

6

was presumed for most of the alleged prescriptive period, and the Court held that the plaintiffs "could not have used the property adversely for the required prescriptive period . . . and thus the [district] court was free to weigh this evidence more heavily than the presumption of adverse use." *Id.*

{12} In this case, during the alleged prescriptive period, Plaintiff and other members of Laguna Vista used Sierra Leone Drive for recreation and convenience. Shroyer, who owned the land during that period, testified that he permitted specific Laguna Vista residents to use the road, and knew that others were also using it. Shroyer also testified that at one point, toward the beginning of the alleged prescriptive period, he erected a gate with a few feet of fencing on either side to keep hunters out of the area, but that his intention was not to exclude local residents from accessing the property by foot. Though the gate was initially locked toward the beginning of the alleged prescriptive period, Shroyer removed the lock after a short time (two to four years), making the road accessible once again.

{13} Additionally, Plaintiff testified that Shroyer was aware that Plaintiff frequently accessed the property, and that Shroyer did not object. In fact, Plaintiff testified that he personally told Shroyer that he was "up there all the time" and that Shroyer offered no objection.

{14}    Because Shroyer made Sierra Leone Drive accessible for most of the prescriptive period, and because he knew that Plaintiff and others were using the road and did not object to their use, we conclude that the district court's finding of permissive use, as opposed to adverse use, is supported by substantial evidence. Having properly found that Plaintiff's uses of the road were not adverse for a prescriptive period of ten or more years, we conclude that the district court properly rejected Plaintiff's claim of prescriptive easement, and affirm that conclusion here.

**Easement by Implication**

{15}    Defendant claims an easement by implication over Sierra Leone Drive. "Generally, the law does not favor claims of easement and the burden is on the party asserting such . . . claim to prove it clearly." *Herrera v. Roman Catholic Church*, 1991-NMCA-089, ¶ 11, 112 N.M. 717, 819 P.2d 264 (alteration in original) (internal quotation marks and citation omitted). An easement by implication arises out of reasonable necessity "when there is no reasonable way to use the property without the easement[.]" *Winrock Inn Co. v. Prudential Ins. Co. of Am.*, 1996-NMCA-113, ¶ 19, 122 N.M. 562, 928 P.2d 947. Because Plaintiff's claim to an easement over Sierra Leone Drive is not related to a landlocked parcel, we must determine whether an easement over the road arises out of implication because Plaintiff cannot reasonably

8

use his property without the easement. In this context, the elements to create an easement by implication are:

> (1) A separation of the title; (2) necessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; and (3) necessity that the easement be essential to the beneficial enjoyment of the land granted or retained.

*Venegas v. Luby*, 1945-NMSC-045, ¶ 14, 49 N.M. 381, 164 P.2d 584 (internal quotation marks and citation omitted).

{16} We do not address the first and second elements because we conclude that the third element is dispositive. The Plaintiff failed to establish that the easement was essential to the beneficial enjoyment of his land.

{17} Plaintiff argues that his use of Sierra Leone Drive is necessary to the beneficial enjoyment of his own property because: (1) he has used the road to visit clients and property owners on property to the west of Defendants' land; (2) he has used the road for recreational purposes for so long that he thought he would be permitted to do so permanently; and (3) he planned to use the road as an alternative method of egress in case of a fire. We are not persuaded.

{18} "The basis for an easement by implication must be reasonable *necessity*, as distinguished from *mere convenience*[.]" *Venegas*, 1945-NMSC-045, ¶ 17 (emphasis added) (internal quotation marks and citation omitted); *see also Otero v. Pacheco*,

1980-NMCA-058, ¶ 5, 94 N.M. 524, 612 P.2d 1335 (stating that *Venegas* makes it clear that "reasonable necessity is not synonymous with mere convenience"). Here, Plaintiff testified that: (1) on one occasion he used the Sierra Leone Drive to "consult about some of th[e] area" and to show people around and on another occasion, he used the road for business related to the Jicarilla Apache Nation; (2) he enjoys using Sierra Leone Drive to walk with his dogs; and (3) he traveled the Sierra Leone Drive looking for emergency egress and planned to use the road as an emergency escape route.

{19} Notably, Defendants offered evidence of possible routes of egress from Plaintiff's property apart from Sierra Leone Drive. At trial, the Captain of the Laguna Vista Fire Department testified that the Fire Department's current emergency exit plans for Laguna Vista do not involve the use of Sierra Leone Drive because the road is inaccessible and would be dangerous as an escape route.

{20} From a review of the record, it appears that Plaintiff's consistent use of the road is for recreational purposes, to wit, walking his dogs. However, Plaintiff does not cite any evidence in the record to support his claim that these uses of Sierra Leone Drive are *necessary* for the beneficial enjoyment of his land or that there is no reasonable way to use his property without the easement, and we have found none.

{21} Accordingly we hold that the district court did not err in rejecting Plaintiff's claim of easement by implication. *See Santa Fe Exploration Co. v. Oil Conservation*

10

*Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819 (holding that where a party fails to cite any portion of the record to support its factual allegations, the Court need not consider its argument on appeal); *see also Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

**CONCLUSION**

{22}    For the foregoing reasons, we affirm the judgment of the district court.

{23}    **IT IS SO ORDERED.**


_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**LINDA M. VANZI, Judge**